The Honorable Judges of the United States Court of Appeals, in and before the 7th Judicial Circuit. Hear ye, hear ye, hear ye. All persons having business before this Honorable Court are admonished to draw near and give their attention as the Court is now sitting. God save the United States and this Honorable Court. Good morning, ladies and gentlemen. Before we start, I will say for the record that we are accompanied by Judge Rovner, who is at the Federal Courthouse in Springfield, Massachusetts, but on the video, so you will hear her intervene from time to time when she wishes. So we are, in fact, all three here. So our first case for this morning is Cook County, Illinois v. Chad Wolf. Mr. Sinzak. Thank you, Your Honor. May it please the Court, Jerry Sinzak, appearing on behalf of the United States. The District Court's preliminary injunction is flawed in several respects and should be set aside. As a threshold matter, plaintiffs fail to assert a cognizable injury and, moreover, they seek to insert in interest greater use of benefits by aliens that is diametrically opposed to the public charge provision. Now, Mr. Sinzak, we're reviewing Judge Feinerman's grant of a preliminary injunction for an abuse of discretion. The District Court's decision here is in line with injunctions made by district courts in the Northern District of California, the Eastern District of Washington, the Southern District of New York, and the District of Maryland. Other courts may, but can we really say that the District Court abused its discretion in the balance of the harms in granting this short-term preliminary relief? Yes, Your Honor. Of course, to obtain a preliminary injunction, plaintiffs have to establish all the elements of the injunction, including a likelihood of success on the merits, and they have not done so here in terms of the balance of the harms. We also feel they have not done that either as the Ninth Circuit and the Fourth Circuit, as well as now the Supreme Court, has concluded that the balance of harms in the public interest weighs in favor of the government, or at least in favor of allowing the rule to go into effect. On the merits, as the Ninth Circuit held, this rule easily accords with and is a reasonable interpretation of the public charge provision. So, of course, that is what we need to discuss. Judge Barrett? Well, I was just going to say one thing that would be helpful to me is for you to tell me exactly who is subject to the public charge provision. As far as I can tell, refugees and asylum seekers, those whose socioeconomic status would be most closely tied to their immigration status, are excluded. So am I correct that the public charge rule applies primarily to family immigrants, those who are coming on employment visas, and then lottery winners, green card lottery winners? That's correct, Your Honor. I mean, those are the primary categories. And none are eligible for aid, with some minor exceptions. I mean, they are eligible after a certain number of years. After they have green cards, after the five years? That's correct, yes. Right. So they're in this period, the public charge rule is counting against them aid they're not entitled to receive. Anyway. You know, I mean, the public charge provision provides that an adjudicator has to determine whether at any time in the future a person is likely to become a public charge. So at the moment, they're being evaluated. They may not have received them. But the question is whether in the future they are likely at any time to receive them. So that is the test. And that is what the rule sets forth a number of factors. Right. And so, I mean, there's so many things we can talk about. And I think I'm going to put to one side your opening argument about standing. Although, I do think the government, at least with respect to Cook County, has more or less conceded standing. But putting that to one side, one of the things that concerns me is precisely about this five year look forward that the background law requires you to make. Because I look down the factors beyond the statutory factors and the way that you're weighing them. And I find no empirical evidence in this record to support the type of inference that you're drawing. And indeed, some of them just seem to be plucked out of thin air. Like the idea that you should hold family size against somebody because that means they're more likely to become a public charge. It's actually quite to the contrary in most countries. A large family is a way that they provide a social safety net. English proficiency, to say that somebody who doesn't speak English well today, five years out, isn't going to be actually bilingual and a more competitive worker in the workforce, seems to me at least something that needs support. And I don't find that support in this record. Your Honor, and I guess I just want to emphasize, of course, this is a totality of the circumstances test. But you can't, zero plus zero equals zero. So if you are throwing in a lot of factors that you have not supported with empirical evidence that would allow a rational person to see that this individual is likely to become a, quote, public charge, and I do want to talk about what that means. But if the evidence doesn't lead there, then it can't take part in the totality of the test. Yes, and to answer Your Honor's question more directly, there is empirical evidence in the record. The agency in its notice of proposed rule explained at length and showed studies, for example, exemplifying that English proficiency is something that is associated with higher unemployment, is associated with greater benefits, a low English proficiency. And the agency made clear that it will consider language proficiency in general. If a person is bilingual, that would be a positive factor weighing in. But why does the agency think that people will plug up their ears for five years and not learn any English during this waiting period that the law imposes? Well, Your Honor, I mean, you know, it is, again, a series of factors. No, but don't tell me that. Let's focus on this one. Why, what evidence does the agency have about the learning curve for English proficiency from people of various age groups who enter the United States? Your Honor, I'm not sure there's evidence of that particular. There isn't any. Right, which is critical because if the person is poor in English today, but by five years later, with practice, is now perfectly competent in English, then you can't hold English proficiency against them. Well, again, it's an estimate of how likely someone is to be. Based on what? Showing that people who are not proficient in English. Based on what does that evidence come? Do you have data about? There's certainly data that low English proficiency now. No, no, no, but data about somebody who enters today, five years from now, is still not going to be able to speak English. I'm not aware of anything in the record on that particular point. All right. Counselor, I'm glad that Chief Judge Wood is asking this question because it goes to a question that I have about exactly the posture of the case and what you're arguing. A lot of this back and forth seems to me that it has to do with the APA questions of arbitrary and capricious reviews, right? That's correct. Okay. And here, can you articulate for me, because you say it slightly differently in your brief in different places, what is your definition of public charge in the statute? The definition is whether someone is likely, at any time, to use one of the specified benefits. Okay. I'm so glad you said that because I thought that that's what you were saying, too. And what bothers me is I think you've tried to rewrite this statute. Using one benefit isn't the same thing, in my view, taking an ordinary dictionary understanding of the notion of public charge. You know, getting one meal at a soup kitchen surely does not make you a public charge any more than my neighbor's responsibility if I have dinner over at his house. And the way you've done it is, actually, you could become, according to the government's approach, a, quote, public charge in two days if you used six benefits one day and six benefits the next day, the way you're stacking months. And is that really your position? That is not our position at all, Your Honor. But that's what you've argued. That is how you've argued it. You've said if you use two things, that counts as two months. Counsel, is it the case, so in your brief, you say the rule renders inadmissible aliens who are likely to rely on government support for a significant period to meet basic needs. I took it to be that that definition, which you state in slightly different ways at different points in your brief, was your interpretation of public charge in the statute. And then the regulation, which obviously has a lot more detail than that, was your effort to implement in a specific way that understanding of the statute. Am I misunderstanding? Because you're telling Judge Wood something different now. I don't believe I am. That is our view. And I just want to be absolutely clear. We are not talking about the use of one benefit, you know, for one day or even two benefits for two days. Well, where do we see that in the regulation? The regulation says you have to use more than 12 months' worth of benefits. But then you define a month to be one benefit. You very clearly say, repeatedly in your brief, that if you use two benefits inside one month, that counts as two months. And so it seems to me if you use 12 benefits inside of one month, as somebody might who has temporarily lost a job, looking for a new job, finds the new job six weeks later, that person has used up their entire allotment for the 36-month period. If I can just elaborate. Judge Rovner has a question. Suppose a non-citizen awaiting eligibility for citizenship needs a bit of assistance to get on his feet. If he needs housing assistance, SNAP, and Medicaid until he gets settled, he could be deemed a public charge for needing just four months of assistance. Correct? That's correct. And I would like to elaborate because I want to make something clear on this point. The agency considered the universe of possible benefits. And it narrowed that universe down to, and if we're talking about non-cash benefits, just three. Medicaid, with exceptions, housing vouchers, and a SNAP program. So food, shelter, and medical care. Those are the only benefits that qualify. So you could only ever use three benefits in one month. Only the most important three things that a person needs. Housing, food, and shelter. Basic necessities. So if you're talking about someone for four months who's relying on the government for food, for shelter, for medical care. That looks a lot like someone who's primarily reliant on the government. No, it doesn't at all. And as a matter of fact, the government should recognize that on the Medicaid side, it's financial lunacy to have somebody forced over to the emergency room who could be very inexpensively treated in advance. I worried, one of the amici may have had a footnote about the coronavirus. I don't know why the government thinks it's better for people not to go to the doctor to get a simple test to see if they have become infected with this, we hope not pandemic, but very serious. And the rule excludes emergency medical care. But that's the thing, you have to go to the emergency room. You're not going to go to see the doctor. You're not going to go to the CVS one minute clinic. Counsel, do you want us to get into all of this at this stage? Because Judge Feinerman didn't. And I'm kind of surprised that the turn the argument's taking because I would have thought that you were going to be talking primarily about the Chevron step one argument that the district court rested its decision on about whether indeed that term public charge requires primary and permanent dependence. Rather than these factors, it seems to me that if the district court was wrong about that, if public charge also encompasses some kind of like a significant period that's not necessarily permanent and dependence that is significant but not necessarily total, then it's a separate question that the district court didn't get into because it's Chevron step one holding whether the factors that you've identified actually make sense. Am I? No, Your Honor is correct. I mean, the district court held on Chevron step one grounds and both the district court and plaintiff's argument really hinges on the idea that there was this long-standing fixed definition that Congress adopted. But there is also no doubt that step two was fully briefed in the district court. The district court chose not to reach it, but no one should be surprised even if we were to grant you that the language used in the Gagieu case was perhaps not in context completely dispositive, the permanency. But you do seem to be conceding that very impermanent use, a very short usage of benefits is not enough to make somebody a public charge. Well, I mean, the agency in the rule itself in setting forth this 12-month threshold said, no, we're going to take a middle ground position. But it's not a 12-month threshold. I really take exception to your calling at that given your own definition of it. Twelve months of benefits usage threshold. Right, which could happen in one month. It could not happen in one month. Yes, it could. No, it could not, Your Honor. I don't understand it. There could only be three benefits that you could use plus cash assistance of four, but that would not, I don't understand how you could get to. So you go by the month instead of by the day? Yes, by the month. Where do you say that? The rule says 12 months of benefits. I'm not sure the exact part, but I don't think plaintiffs or the district court would be saying that. If you go to the doctor every day in a month, that counts as one month if you're doing it under Medicaid? Yes. So it can't be the case that you could be found to be a public charge for one or two days worth of benefits. All right, so four months. Take Judge Rovner's hypothetical. Yes, four months. So that means for four months, you've been relying on the government for, or you're expected to rely on the government for food, housing, and shelter. You know, there's a gotcha here, too, because many people in the categories Judge Barrett mentioned are not allowed to work by the government. So if a spouse comes in or if a family member comes in, they are not very often immediately given a green card to go work. They're told, no, you actually can't work because you're not, we haven't given you permission yet. And you're going to say that that, nonetheless, should be held against them. Your Honor, I'm not familiar with that particular hypothetical. I don't take anyone to be arguing that. But they can't get benefits either, right? They can't get benefits. They can't work. But they may have skills that the adjudicator will take into account. I mean, they may have financial resources. Many people are required to get an affidavit of support from a sponsor. Well, those people are different. I really think we need to put those people to one side. For the people who get the affidavit of support, there's an elaborate statutory scheme. Those are enforceable. I don't think we're talking about those people. But I think, this is why it's so complicated. I think we might be, which is why I'd like you to help me out here. I thought that the people who had affidavits of support, I thought that the people subject to the public charge rule were these people that Judge Wood is talking about. Yes. Who have affidavits of support or who are coming to work for Google and so they have to have employer backing. That's correct. I mean, the vast majority of people, certainly the family visas, have to obtain an affidavit of support. So why does the government have that? That sounds even more absurd to me because if there is an affidavit of support, it's exactly like some of these earlier cases where there was assurance to the government that it would be reimbursed for whatever expenditures it made and so there's no public charge whatsoever. It's on private shoulders. And that is a factor that is taken into account and that could well be someone... But you can't be a public charge if you have an affidavit of support. No, I mean the affidavit of support lasts generally for about 10 years. Right, so well beyond the fact. Or it could be less. So the question is whether at any time. But I do want to get back to Judge Barrett's overall point in the district court's question about whether this term has an unambiguous meaning that Congress adopted and there's no evidence in the record of that. In fact, the evidence goes exactly contrary to that. But isn't the evidence pretty clear? I guess I just want to say which end of the telescope we're looking through. Even if you're right that there's no evidence that the permanency factor that was mentioned quickly by Justice Holmes in the Gague case isn't baked into the word charge. You couldn't be a public charge for a very short period of dependency or use of, maybe not even dependency, use of government benefits. Medical care, for example, people can skip. People do skip it. And this record indicates many people are skipping it. If the government wants to create a pandemic, go ahead, I guess. But it seems very foolish. Well, I mean, in part the government under this rule will not be admitting individuals who would be likely to rely on public benefits as well. But that's not before us, right? We're not talking about the plaintiffs who are here right now. We're primarily talking about people who are adjusting status and is correct. Right, and so the people who came in under affidavits of support are not allowed to use Medicaid if they wish later to adjust their status and to avoid having a negative factor on their record. So they should be well advised to stay away from a doctor's office. No, I mean, they should be advised to use private resources. Are they eligible for Medicaid? Generally, they are not. And so, yeah. After five years, are they eligible? It would depend on their particular circumstances. Under the affidavit of support, the sponsor is required for paying for whatever medical care they get. And so if they were eligible, then the sponsor would. But I think what the sponsorship provision indicates is that, you know, plaintiffs are here saying that this term has a fixed meaning and it can only apply to long-term usage. Because the word public charge, if we can get away from, you know, the heat of the present debate, means you're dependent on the government. If you're somebody's charge, you know, there's a sense of dependency, there's a sense of responsibility. And something very brief doesn't count. What about school lunches? Well, Your Honor, we're not here to... Means-tested school lunches. Your Honor, we're not here defending that particular thing. In fact, the agency didn't consider that as one of the means-tested benefits. Again, it focused on these three means-tested benefits going to housing. SNAP, right. SNAP, housing, food, and medical care. So you consider those significant Like, so, you know, going back to the definition in your brief, rely on government support for a significant period to meet basic needs. Your definition in your brief implies some degree of dependence. So I would have thought that your answer to Chief Judge Wood would be that, yes, a public charge is someone who is dependent on the government even if for supplemental support as opposed to permanent support. But what I hear you saying now is that someone who receives is dependent? Is that what you're saying? No, I don't mean to be... Because something you could forgo is something that's optional. So if somebody can just say, well, you know, I have an earache but I'm not going to go to the doctor because it's going to count against me for my immigration, my efforts later to adjust status. Or they say, you know, I am living in a shelter but I'm not going to try for Section 8 because that's, you know, going to count against me. And actually, I want to get back to this list of criteria. So many of them are troublesome. You're looking at things like, you know, do you have skills, certifications or licenses? But those things people don't necessarily show up in the United States with. And if they are barred from working, it's going to be hard for them to get, you know, a plumber's license or, you know, a certification of some sort of thing for that matter. Well, I just want a couple on that particular point. I mean, Congress required in the statute that the agency consider a person's education and skills. Sure. And not only that, people who are adjusting status could be here for a while before they do that. So they could develop these skills. If they are not barred from the path to do it. No, I mean, you added licenses. If they have a visa, they're here legally. They have a visa as a family member. They, you know, I don't know all the immigration laws on whether they can work or not. Well, you should know those immigration laws. But they have time to become, you know, proficient in English. So by the time they're applying, if they are, they've been here for a while and they can demonstrate that they, you know, they're proficient in multiple languages, then that will be counted in their favor. So it is... One thing of the fact that one provision of the 1882 Act established the public charge exclusion while a different provision of the 1882 Act created an immigrant fund to provide for immigrants who fell into distress or need public aid. Doesn't that alone show that Congress did not intend to exclude immigrants who needed short-term aid? No, it doesn't, Your Honor. I think what's key about that provision is it was a tax imposed on ship owners and in some cases the immigrants themselves. It was not a fund funded by the public and it did not make people a public charge. No, it was paid by ship masters. How is that different than any other tax established to create a social safety net? Like a tax on... That's just an earmark. Because those are paid for by the public generally, not by the people directly benefiting from the... Okay, but counsel, I mean, yeah, I see that point because public charges, especially in the poor laws in the 19th century, did kind of morph from using public charge to being charged on the public to gradually being used to refer to people who needed the aid. I get your point about it being funded by the immigrant fund and not the public. Nonetheless, as Judge Wovner is pointing out here, if you are reliant, I mean, it would still be a factor or a gauge if you were reliant on this immigrant fund for help getting on your feet. It's not necessarily then a sign of any kind of longer-term dependence. Well, we don't know any of the details about that level of support. I mean, was that one month's worth of support? Was it non-cash or cash? I mean, we have no... We do know some about that. I've found some about that. Well, in any event, I mean, what we're talking about here and what the rule is saying is if you use 12 months over, you know, including the aggregation point, but 12 months... Counsel, it cannot be that that's what you think it means because if you're saying that it means that, something that specific, that... I'm not saying that that's what it means as a general matter. I mean, it is a... It's been clear from the beginning from 1882 that Congress set down a broad, capacious term that Congress itself, the BIA has recognized, has had varied interpretations. Not very much. Not until this rule. I don't want to cut off this discussion, but your time is almost up. Yes. And I know you wanted five minutes for rebuttal. I will probably give you some extra time, but if you would like to wrap up at this point, it might be a good idea. Yes. You know, I think we've covered a lot of ground here. I mean, again, the district court's holding was on, and the plaintiff's argument is that this term has an unambiguous meaning and it certainly does not. It has a broad meaning since 1882 and Congress has recognized that and has deliberately left it to the executive branch to interpret the term and given it broad discretion to do so. Okay. Thank you. Thank you very much, Mr. Sinzback. Next, we'll hear from Ms. Flint. Your Honors, and may it please the Court, Tacey Flint, on behalf of Plaintiff Iser, with the Court's leave, I will spend my argument time focusing on the statutory interpretation questions and my colleague, Mr. Morrison, in his time, will focus on standing and the remaining injunction factors, although, of course, both of us are happy to do our best to answer any question you have. To begin, on the statutory interpretation. I'll start you off, please. It's difficult, you see, because there's a lag. How do you suppose someone who is a public charge was different than someone who is a pauper in the 1907 Immigration Act? In the 1907 Act, pauper and public charge certainly do have overlap. Public charge is a broader term than pauper. Several of the cases from that era talk about public charge. Someone could be a public charge if they reach primary dependence on government support as a result of poverty, poverty and insanity, poverty and physical disability. There are multiple grounds on which a person could become a public charge, whereas pauper is a more specific term. Can I ask you this? Your primary argument, as I understand it, is that the district court was correct to stop this analytical process. It's step one of the Chevron framework. I'm going to assume for the sake of this court that the Chevron framework is alive and well and that nobody has done anything to it yet. That's what we need to follow. The word public charge, as we've been discussing and as we have mountains of briefs to show, does not strike me as one of those things like saying you need to be 35 years old, that everybody can figure out. What does that mean? Maybe a little all year or part of the year, but the term public charge, I think we've established, could mean primarily dependent on the public so that the public is providing, let's say, more than half of somebody's support. It could mean 100% dependent on the public. It could mean that the public is supplementing, and it's sort of more like 30%. Maybe at some point if we got down to episodic and occasional uses of public resources just to tide over a brief period of time, I'll say down to the 10% level, maybe that doesn't fit, but surely there are, there's some interpretation that needs to happen for this word, isn't there? Let me answer your question in two ways. First, the term public charge does have a fixed and unambiguous meaning. The district court was correct to find that. The meaning is primary dependence. Where do you get that from? Do you get that from GEGU or do you get that from? Certainly not the statute. The statute doesn't say and here's the definition section. That's correct. The statute doesn't say here's the definition section, but we get it from all of the tools that are appropriate for interpreting a statute. Statutory context, including the context that Judge Rovner raised during my colleague on the other side's argument, the 1882 provision for temporary relief, and we get it probably most obviously from the history of judicial interpretation that had happened over a century before Congress reenacted the term in 1996. Everyone agrees that this term has meant the same thing from 1882. Everyone doesn't agree as the mountains of briefs. Everyone doesn't agree and there was confusion. There was an early Treasury regulation where the Treasury was trying to give instruction on what public charge meant because people weren't quite sure and different. Actually, Cook County was very generous and said it wasn't going to report to the government people who were receiving outdoor relief while California, not so generous. There were differences in enforcement and some confusion, so to pinpoint it at any particular point is kind of hard to do. As far as the federal statute is concerned, the parties, in this case at least, the government and the plaintiffs, agree that the term has meant the same thing from when it was enacted in 1882 through the 1996 statute. Every enactment, the five enactments that followed 1882, did not change or attempt to redefine the statute. Over that time, the statute was interpreted by dozens of courts, including Gaggione by the Supreme Court in 1915. Those cases are consistent. They reject a determination of public charge status if someone is using transient benefits, using most of the things you described, Chief Judge Wood, that are anything other than primary dependence on government. Counsel, I want to ask you a question about your in-kind and cash point. I really don't understand that point because in the late 19th century into the 20th century, outdoor relief, poor houses, for example, are an in-kind benefit and outdoor relief primarily consisted of fuel, of food, those kinds of things. And in some jurisdictions, I mean this was a county to county thing under the poor laws. In some jurisdictions, they, poor houses became out of fashion. And so they primarily cared for even those primarily and permanently dependent with in-kind help. So I don't understand the government's choice to give you housing as opposed to giving you the cash for housing, why that's significant to you. Thank you, Your Honor. This highlights a really crucial distinction, the distinction between what the word public charge means and how the agency chooses to apply the definition when it determines who is likely to become a public charge. The term public charge has not changed. It has a fixed meaning. The agency has, over time, changed how it determines who is likely to become a public charge. And exactly as you observed in the past, institutionalization was the common means of handling and helping poor people who needed government assistance or they were primarily dependent on government assistance. That, of course, is not how the world works anymore in most cases. So now, when the agency determines who is likely to become a public charge, it focuses on benefits. And that's, that was true of the, of the 1999 financial guidance as well. Is there a, what percent of non-citizens who require public assistance still need that assistance in, say, five to seven years? I'm sorry, Your Honor. I don't think the record answers that question. Or if it does, I don't know it. But this, the agency's rule applies to, it finds someone likely to become a public charge if at any time  or, you know, in many decades they will ever accept 12 months of benefits over a 36-month period. And Counsel, just to clarify your answer, you're not saying or you didn't really quite answer my question that I asked before. You say that it's part of the public charge definition that in-kind benefits can't count. That, no, I don't believe that is part of the statutory definition. That is how the agency has interpreted it in the 1999 field guidance. And it's not free, I mean, putting aside, you know, questions of whether they adequately explained this shift for purposes of the APA, putting aside that, you're simply saying that because the agency for a long time excluded in-kind benefits that now they can't count them? No, I am not saying that. If the agency says So maybe some of the amici said that, but if you're not saying it, that's helpful to know. Yeah. As the world exists with the benefits that exist right now, I don't think the term public charge could be, someone could be found likely to be a public charge based solely on the use of supplemental benefits. So that's not inherent to the term. So is the difference That's based on what statute, what, how benefits work right now. So is the difference use of benefits that are generally available to the public as a whole? I mean, I assume immigrants drive on the roads, too, and the roads are paid for by tax dollars, but we don't tell them they can't drive on the roads. So, where's the line there between the things that are targeted to people who have some economic need? That's a great question, and we, as you observed earlier, Judge Barrett, we don't have a clear definition of the term public charge from the government. Obviously, the rule explains how they define public charge for purposes of the rule, but it doesn't say how they interpret the statute. You raised a quote from their brief. Don't they say, actually, I mean, I find this somewhat troublesome, but don't they say that because the statute says in the opinion of the Attorney General, which they say we should now consider the opinion of the Secretary of Homeland Security, might be some issues about that, but we'll put that to one side, that there's actually no limit, that the Attorney General could decide that people with red hair are public charges, and that would be fine? That is close to their argument. They certainly believe that the statute gives the agency great discretion. I read them to say unfettered, actually. And throughout this litigation, they've taken the position that charges liability and a public charge is someone who imposes a liability on the government. In their reply brief, they tried to narrow their interpretation of the statute. I believe that was what Your Honor was quoting. No, it was from their blue. Oh, from their blue brief. But in their briefing in this case, they tried to narrow it in this appeal. But that's not the position they took before, for one thing, in the district court. And for another thing, that's not consistent with the way the rule works. They're now saying that maybe we can interpret the statute to mean public benefits for an extended period of time. But as Your Honor observed, the rule would cause someone to be determined to be likely to be a public charge after three months. That is consistent with what the rule provides. And it's hard to imagine that that is what anyone would consider an extended period of time. Well, there's data. What bothers me   it's close to, it's very anecdotal, I guess, if you look at the record. And there, you would want data to be able to be able to tell data to show, for example, if somebody is laid off from a job, how, what's the median time for finding a new job? Because if that's all it is, you know, people don't actually normally just walk out of one job and show up the next day at the next job. That would seem to me to be not so unusual as you would call it a public charge. It's just a brief helping hand that many people take advantage of, as a matter of fact. And that is exactly what the history of case law says. When Congress most recently enacted the term public charge in 1996, it had dozens of cases interpreting the term in front of it. Now, I don't need to march through them. The district court did. The briefs in this court do. But I can represent you. I've read all of these cases. And as I read them, there is not a single case where a court says, yes, it is acceptable to determine that someone is a public charge based on short-term minimal use of benefits. So when does someone become a public charge? So, Chief Judge Wood gave you examples before as someone who is 52% reliant or 80% or 30%. What, in your view, is two years long-term enough dependents to qualify as a public charge? The statute says, or the statute means primary dependents for the long-term government benefits for subsistence. The agency is free to determine who is likely to become a public charge. What is the amount of time a person would need to receive government assistance before it would be reasonable for the government to consider her a public charge? What I can say is it has to be more than certainly the three months that is permitted or the 12 months that would, even the 12 months that would happen if you only used one benefit at a time. Could you say a word about disabled people because that's another factor that's heavily weighed against someone. That's right. Are you, well, we've argued. Some of the amicus brief focused on that but the statutory scheme has actually special provisions about people who are HIV positive, for example, who will need a lifetime of medicine. Right. So, we argued that the district court didn't need to reach but we argued that section 504 precludes disability as a but-for cause of excluding someone from the country. The reason I'm asking some of these questions, I'll just put the cards on the table, is the district court resolved this at Chevron step one. If one did not agree that that was correct, if we thought that this term public charge has enough play in the joints that it requires some interpretation, then you have to move to Chevron step two. Correct. Chevron step two is not an automatic victory for the government. Chevron step two has its own set of inquiries and some of the questions, at least I've been asking, stem from my interest in how that works out. That's right. So, Chevron step two asks whether this is a reasonable application of the statute and perhaps it's even more clear that this is not a reasonable application of the statute. Public charge was enacted with a Congress that incorporated a well, many times interpreted term. Even if public charge allows some play in the joints, as your Honor asked, it does not reach the level of someone who accepts only supplemental benefits for as short a time as 12, six, three months, whatever would cause that person to be excluded or have their adjustment of status denied under the rule. These are supplemental benefits. That's why the non-cash difference has emerged. It's because the way the benefits work now, if someone accepted all supplemental benefits that are acceptable under the rule, you could not survive just on those benefits. But that may not be inherent to the statute. As for the disabled, would a Stephen Hawking be deemed likely to be a public charge based on his need for lifelong intensive and extremely expensive government sponsored health assistance? As I read the rule, I believe he would. All right. I think your time is up. So maybe we'll move along to the next person. Thank you very much. Ms. Flint, Mr. Morrison. May it please the court, David Morrison, as special assistant state's attorney. Cook County and ICER have both established their suffering demonstrable and reparable harm. Now, can I ask you this, Mr. Morrison? Cook County and ICER, if you want to call it that, or this coalition, may not stand in exactly the same shoes from the point of view of Article 3 standing and I don't like to call it prudential standing because the Supreme Court lectured us in Lexmark that we're not supposed to call it that, but zone of interest, let's say. But does it matter? If Cook County has standing, this case is properly here? That is correct, Your Honor. You only need to have one plaintiff who has standing to have a case and none of the cases that have been evaluated in the public charge have found that any of the plaintiffs lacked Article 3 standing. Cook County is the only home rule county in Illinois and has the constitutional authority to exercise any power and perform any function pertaining to the government including the public welfare. Cook County's health system is one of the largest in the country and pursuant to its enabling ordinance it must provide care regardless of a patient's ability to pay. It makes it the largest safety net in the region. Is that true? When you say it must provide healthcare are there something that we might think of as physician office visits that applies to or is that just the emergency rooms? Cook County doesn't turn away people at the doors or boundaries. My understanding is it doesn't have any responsibility and is the largest charity care provider in the region. It's a good thing the health system doesn't turn away people at the borders. Infectious diseases like coronavirus know no borders. The key to effective healthcare is early diagnostic treatment. What do you need for early diagnostic treatment? It's cheaper to do the early diagnostic treatment than the back end cure in the emergency room. The government's argument that you're asking for more money to be spent is not empirically well founded. Let's say we agree there's an article 3 injury. Can you address the argument the government made? The zone of interest is not demanding particularly when the APA is involved. The plaintiffs need to fit within the zone of interest to be protected or to   I think it's important to say that hospital systems, state agencies, and other organizations that provide public assistance to aliens in their households will suffer financial harm as a result of the rules implementation. And then to suggest those hospital systems, public assistance agencies, and local governments are not within the zone of interest to challenge the shift from the federal government to these other agencies. And in particular with respect to ICER, it has 100 different organizations spread throughout the state of Illinois. Its core mission is to provide health and social services to the immigrant population in the state  Illinois.    a mission to provide health and social services to the immigrant population in the state of Illinois. And it is a mission to provide services to the immigrant  in the state of we will take a recess of about ten minutes.